# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **DePASQUALE STEEL ERECTORS INC.**, an Illinois Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 16 C 10892 ) |
| **GEMINI INSURANCE COMPANY**, a Delaware Corporation, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

DePasquale Steel Erectors Inc. ("DePasquale") filed a lawsuit against its insurer, Gemini Insurance Company ("Gemini"), alleging breach of contract and bad faith under 215 ILCS 5/155 in a matter related to an underlying lawsuit filed against DePasquale as third party defendant. DePasquale asserts that a conflict of interest exists between itself and Gemini so that Gemini may not use its own counsel to defend the lawsuit and must instead appoint independent counsel. Although the parties have filed cross-motions for summary judgment, this opinion explains that both parties' failure to provide sufficient input on all genuine issues of material fact requires that both motions be denied.

## Factual Background

DePasquale holds a Commercial General Liability policy from Gemini with a $1 million per occurrence limit (D. St. ¶¶ 4, 5). According to the policy Gemini has a "right and duty to defend the insured against any suit" (D. St. ¶ 6).

On or about June 14, 2016 Two Brothers Property LLC and Go To Logistics, Inc. filed a complaint against Triumph Development Corporation and Triumph Construction Services (collectively "Triumph") charging that negligent construction resulted in the sudden and violent collapse of the roof of their property and seeking damages in excess of $1.7 million (G. St. ¶¶ 8, 9, 10). Triumph then filed a third party complaint against nine subcontractors, including DePasquale, seeking contribution for their pro rata shares of liability as joint tortfeasors (G. St. ¶¶ 12, 13). DePasquale in turn tendered the original and third party complaints to Gemini, noting that the liability was at least potentially covered by its insurance policy and thus Gemini owed a duty to defend DePasquale in the lawsuit (D. St. ¶ 9).

Gemini then notified DePasquale by email that it would defend the lawsuit without reservation of right (D. St. ¶¶ 19, 20). DePasquale then sent a letter to Gemini explaining that a potential conflict of interest existed because the jury demand exceeded Gemini's policy limit, so that Gemini was required to pay for independent counsel to defend the lawsuit (D. St. ¶ 21). DePasquale's letter cited Perma-Pipe, Inc. v. Liberty Surplus Ins. Corp., 38 F.Supp.3d 890 (N.D. Ill. 2014) for that proposition (D. St. ¶ 22). On November 4 Gemini sent a letter to DePasquale advising it to put its excess insurance carrier on notice because there could be a verdict in excess of its policy limits (G. St. ¶ 17). On November 7 Gemini sent a letter to DePasquale stating that it disagreed with that position and denying Pasquale's request to retain independent counsel at Gemini's expense (D. St. ¶ 23).

**Legal Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts

consider evidentiary records in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

There is a potential added complexity where, as here, cross-motions for summary judgment are presented. Because the court must then adopt a dual perspective that this Court has often referred to as Janus-like, it must credit the nonmovant's version of any disputed facts as to each motion, and that can on occasion lead to the denial of both motions. Regrettably that unfortunate consequence has eventuated here.

## Material Factual Issues

Under Illinois law "an insurer has a broad duty to defend its insured in any action where the allegations in the complaint are even potentially within the scope of the policy's coverage" (Nat'l Cas. Co. v. Forge Indus. Staffing Inc., 567 F.3d 871, 874 (7th Cir. 2009)). And with its duty to defend comes its right to direct its defense, which includes choosing its lawyer (id.). To be sure, that lawyer owes ethical obligations to both the insurer and the insured, but in reality an insurer-appointed lawyer may be more closely aligned with the insurer's interests (id.). Thus if a

conflict of interest exists between the insurer and the insured, the insurer may be required to appoint and pay for independent counsel (id.).

But in that respect Littlefield v. McGuffey, 979 F.2d 101, 105 (7th Cir. 1992) has cautioned that "[n]ot just any conflict will do." Instead Illinois courts have found that a conflict necessitating independent counsel exists "when the insurer's and the insured's interests in the conduct of the tort action are in serious conflict" and the insurer and the insured are "complete adversaries on a crucial issue which would necessarily be decided either one way or the other if liability was imposed" (id. at 106).

But Littlefield was also informed by the less demanding standard in Illinois caselaw -- specifically Nandorf, Inc. v CNA Ins. Cos., 134 Ill. App. 3d 134, 479 N.E.2d 988 (1st Dist. 1985) -- that recognized a broader category of conflicts of interest, noting that one could exist when "the insurer has 'an interest in providing a less than vigorous defense'" (Littlefield, 979 F.2d at 106, quoting Nandorf, 134 Ill. App. 3d at 139, 479 N.E.2d at 992). In that light Littlefield, id. concluded that "[u]nder Nandorf, then, a conflict of interest may exist when the insurer lacks incentive to defend its insured on a portion of the claims that appear not to be covered by the insurance contract."

Of course the operative word in Littlefield is "may;" and here the parties pose the question whether the $700,000 disparity between DePasquale's $1 million policy limit with Gemini and the $1.7 million total sought from all nine subcontractors as joint and several tortfeasors creates the degree of conflict that requires independent counsel. Our Court of Appeals has answered that question differently in different circumstances.

For instance, Nat'l Cas. held that independent counsel was not required in a case where the plaintiff sought punitive damages that would not be covered by the defendant's insurance policy. In doing so the court reasoned that under the specific fact pattern "both punitive and compensatory damages would be tied to the same underlying conduct" (567 F.3d at 876), so that the likelihood that the insurer-appointed counsel would elicit facts that could negate the insurer's obligation to pay for the insured's liability was "quite minimal given that this information is highly likely to be discovered anyway" (id. at 877-78). In other words, because the theories of liability underlying compensatory and punitive damages were not mutually exclusive, Nat'l Cas., id. at 878 concluded that an insurer-appointed lawyer would fairly represent the insured's interests as well.

But in contrast, R.C. Wegman Constr. Co. v. Admiral Ins. Co., 629 F.3d 724, 728 (7th Cir. 2011) instructs that when it comes to deciding whether to settle or go to trial, a likelihood that the insured will incur liability in excess of its insurance policy limit throws the interests of the insurer and the insured "out of alignment." R.C. Wegman, id. employed hypothetical numbers to illustrate:

> Suppose [the insurer] thought that if [the] case went to trial there was a 90 percent chance of a judgment no greater than $500,000 and a 10 percent chance of a judgment of $2 million (to simplify, we ignore other possibilities). Then the maximum expected cost to [the insurer] of trial would have been $550,000 (.90 x $500,000 + .10 x $1,000,000, the policy limit), and so (ignoring litigation expenses) [the insurer] would not want to settle for any higher figure. But [the insured] would be facing an expected cost of $100,000 (.10 x ($2,000,000 - 1,000,000)), and no benefit, from a trial (id.).

In a case such as that, it can be said that the lawyer for the insurance company has an incentive to be "gambling with the insured's money" -- a clear breach of fiduciary duty

under Illinois law (id. at 729). Such a scenario requires the insurer to foot the bill for independent counsel.

But in its brief opinion and order denying rehearing, R.C. Wegman, 634 F.3d 371 (7th Cir. 2011) explained that the possibility of a verdict in excess of the insureds policy limit did not alone drive its decision. Instead its holding was based on a totality of the circumstances, weighing these factors (id. at 372):

> 1) the nature and severity of the plaintiff's injury, (2) the settlement demand in excess of policy limits, (3) the fact that the case had been slated for trial (and in fact tried), (4) the plaintiff's securing at trial an award double the policy limit, (5) [the insurer's] admission that its primary litigating strategy was to downplay Wegman's responsibility rather than to deny liability, and (6) [the insurer's] failure to warn [the insured] that it had adopted a strategy that placed [the insured] in jeopardy of an excess judgment.

This Court's role in diversity cases is to apply our Court of Appeals' precedents in construing state law (Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004)). Here the jury demand against DePasquale and eight other subcontractors exceeds the policy limit by $700,000, and that requires this Court to determine whether that poses a conflict of interest between DePasquale and Gemini. And as shown by the cases discussed in this opinion, that fact alone does not automatically create a disqualifying conflict of interest between DePasquale and Gemini.

In the underlying lawsuit Triumph makes different claims against the nine subcontractors according to their respective roles in the planning, development and construction of the warehouse (G. Mem. Ex. B). Under Illinois law any defendant whose fault is determined to be more than 25 percent of the total fault is jointly and severally liable for the total damages (735 ILCS 5/2-1117). And the input -- or more precisely, the lack of input -- from the parties leaves

this Court unable to predict whether DePasquale's share of the blame will clear that threshold, so that there is no basis to conclude as a matter of law whether or not a conflict of interest exists between the parties such as to require independent counsel.

In an examination of the raw probabilities (1) that DePasquale out of the nine subcontractors would have to shoulder more than a quarter of the blame and (2) whether the availability or unavailability of resources of other subcontractors held liable would cause Triumph to look to Gemini (and hence to DePasquale) for more than $1 million, DePasquale's odds of finding itself on the hook financially because of the $1 million ceiling on Gemini's exposure would appear slim. But litigation is not a simple game of roulette. Here the parties' counsel appear to have forgotten that the standard in summary judgment cases is one of certainty and not just probability, and they have not presented this Court with the evidentiary input to provide certainty on either side of the "v." sign.

Moreover, even apart from what has been said here, Gemini has offered no reason why the excess demand does <u>not</u> create a conflict of interest, apart from pointing to decisions that have held otherwise when examining fact patterns wholly distinguishable from this case. Nor has Gemini offered any explanation as to how its own interests would be disserved by being represented by a well-qualified counsel who would be chosen by DePasquale (which has every incentive to select first-class representation) and who would also owe fiduciary responsibility to Gemini.

## **Conclusion**

As it stands, then, neither party has provided this Court with the facts needed to enable this Court to find summary judgment in its favor as a matter of law. Both parties' motions for

summary judgment are therefore denied, and a status hearing is set for 9 a.m. April 20, 2017 to discuss further proceedings in this action.

                                              _____
                                              Milton I. Shadur
                                              Senior United States District Judge

Date: April 11, 2017